Your honors and counsel, my name is Cliff Gibson and I represent the appellant Jim Ferrell. This is a case that comes up on a dismissal of our complaint under rule 12b-6. Our complaint seeks redress for the gouging of the sick and injured of Arkansas that end up on a helicopter or an air ambulance, also known as. And when I use the word gouging, getting charged up to six times the Medicare reimbursement rate. Let me ask a preliminary question that may be my only question, but if we agree with the Tenth Circuit's analysis of preemption and Eagle Med, is that the you can't prevail? Your honor, the way I would respond to your direct question is Eagle Med versus Cox cannot apply in this court because you have the Watson decision, which is an in-bank decision. I've read Watson. It has some relevant language, but the holding is not. We would respectfully disagree with that analysis. But you haven't answered my question. I'm done if you tell. Oh, if the Tenth Circuit decision. Yes, if you can distinguish the Eagle Med facts from these facts such that if we even if we agree with their preemption analysis, it's not controlled. Controlling is the wrong word. It's not persuasive as to. That's my question. Yeah, that's your Watson argument. I'm factored that if you if you take Eagle Med versus Cox as the authority for this case, yes, we lose. OK, now go ahead, because I'm I'm I just wanted I thought that was the case. Yeah, absolutely. I mean, I'll hit that in on because Eagle Med versus I bought into Eagle Med, but I've read it and I've read the Texas decision and I've read the Montana decision and I thought that was that was the landscape. I'm just clarifying. I think it is the landscape. But but I think you go to Watson and and in the Watson case, because Eagle Med versus Cox, the Tenth Circuit panel decision hung its hat on Puerto Rico versus Franklin, a bankruptcy preemption case. And this court in bank said, and I quote from Watson, as others have observed. And by the way, that is the exact analysis from that Tenth Circuit case. As others have observed, however, the text of the ADA, the American Airline Deregulation Act provision is, quote, highly elastic and so of limited help. You can't just look at the preemption language and the court, the in bank, this court sitting in bank said, and I quote from that decision, the Watson decision. But the preemption clause, and I quote here, should be understood in light of its purpose to promote competition in the industry. And we strongly submit to this panel that that in bank decision is binding on this court is precedent in this court, that it it sets the standard. The holding is applicable to the issue in this case. Absolutely. And it has to be applicable. But it sets the standard. And what Watson is so important for the facts are completely different. The facts, the type of claim is different. I agree. I agree with that. But what it does, it sets the standard for figuring out when you apply Airline Deregulation Act preemption under facts similar to that case. And these facts are completely different. Your Honor, I would respectfully submit that it set out a broad standard for how you find where this preemption lies. Even Justice Scalia in the Morales case said it is not unlimited. There are situations that are too remote, too tenuous, too peripheral for pre for the preemption to apply. Then there's the Williams case. Justice Ginsburg, I believe, wrote this case is much closer because in this particular case, we're dealing with costs, not with employees' rights. There are no employee rights in this case. That's right. It's not an assault case. This is core pricing impact. This is core pricing impact. This could not be more directly related to what the ADA did. Yeah, but the problem is here, Judge. I know, your policy problems, but it couldn't, in the terms of, you know, in the Frye terms, it couldn't be more directly related. I just respectfully submit that Watson talks about policy problems. And where does the preemption promote competition? There's policy, the impact of policy considerations at the margin, and then there's a question of whether policy can require you to disregard the core of the provision. The problem here, Judge, there's no bargain for exchange. These people are laying on a gurney. They don't get told it's going to cost you. But where you're wrong is to say that this is unregulated. Airline Deregulation Act replaced suffocating CAB regulation with FTC-type supervisory regulation of unfair and anti-competitive practices. That is not an unregulated marketplace, because it doesn't have a private right of action, just like the Federal Trade Commission Act. But it's not the lack of regulation. Your Honor, there's a question whether Congress even contemplated air ambulances and that sort of thing when it came to the Airline Deregulation Act. That was the last 28J that got sent to the court. It ain't mentioned in the congressional record, except in one matter. There, Justice Scalia would say that doesn't matter. Okay. I think his favorite word was applesauce, Judge, from Justice Scalia. Our whole theory on this thing is when you drop right down into it, there's no question that there's not an enforceable contract. There was never an agreement on price. And you can't have an enforceable contract without price. That fits right inside Williams. And also this court's decision in data manufacturing versus UPS. We point that out in the brief. This is a four corners deal on count one of the complaint. Count two of the complaint goes directly to what Judge Loken just brought up in this policy argument and so forth. We read and we invite this court to carefully look at Watson because Watson is the decision of the in-bank decision of this court is setting how do we decide where this preemption applies? How do we know when it's too remote, too tenuous, too peripheral for preemption to apply? And we submit to you, Judge, and submit to this court that what you got here is a situation that not only frustrates Congress's purpose to promote competition, it perverts it is what it does. It perverts it. It turns it into something that it isn't supposed to be. And we invite this court to look at Watson carefully. You mentioned that you read the case, but it's trying to lay out. How do you find where that line is drawn in all sorts of instances? There's one case we mentioned was the Rambam case. You know, what if somebody shot when they were acting unruly in the cabin of an airliner? Okay. Is that does that get too remote, too tenuous? You got to do what you got to do. Keep those to do with the price of the ticket. Again, I say it would have nothing to do with the price of the ticket. So it would be difficult to bring it into. Right. And I'm just the regulations applicable here. Exactly, Judge. There are all sorts of things. And when it comes to price here, is this court you can't you can't say that what you the relief you want doesn't affect price. Well, I'm saying it does. Yeah. Yeah. But they get the charges on the back end. Would you get on an airplane, Judge, and fly to Little Rock trusting air evac to be fair with you when you landed? That is the air ambulance situation. It is different from commercial airliners. You pull into a gas station and the gas is fifteen dollars a gallon. You're an informed buyer. You know, hey, I can get it for three bucks down the street. You go down the road. You got disabled, sick people that don't have a clue. And then it's all up to the unfettered discretion of their ambulance companies to hammer them and hammer them what they do. And they're taking advantage of jury counsel, sir. We're not a jury. You don't have to yell. I'm sorry, Judge. You can you feel the passion that I have. And that's all I'm expressing here. But, you know, it definitely dealt with price. The problem here is it's a it's a card trick and it's a perversion of the ADA. And that's what we respectfully submit to this court. Have there been any district courts across the country dealing with the issue of air ambulances? On 12B6 situation, the Wagner case, that was our 1228J that we sent in. I guess it's been about three weeks ago. The 12B6 motion was denied in that case. And it's it it is truly an interesting case because at the Montana case. Yes. It actually criticizes the district court decision in this case and the way it and I'll just read that quickly. I'm looking at my time here. Don't want to run out. The Wagner court questioned the Arkansas District Court's dismissal of as to how the absence of an agreed price to give rise to an implied in fact contract that lacks an essential term. And there's one other thing that judge up there did talking about the arguments advanced by Ari Wagner case. He says a circular logic, and I'm quoting here, permeates these arguments. Defendants reason that preemption under the ADA allows air carriers to fly. I have to comment that if a district judge in the Ninth Circuit ought to view preemption questions differently than a district judge in the Eighth Circuit, because the Ninth Circuit's disregard for preemption has been reversed time and time again. But it still has to influence their district judges. We just thought about a Ninth Circuit district judge here who says preemption shouldn't trump good policy, which sounds like the Ninth Circuit. Well, I don't know. And I don't know that the Ninth Circuit's reversed all the time. Maybe they are. OK, I don't live in Montana. I live in Arkansas. I live in the Eighth Circuit. But there's something that he said that resonated with me. And I would like to quote it to you if I could. Defendant's position leaves patients obligated to pay the ex post facto bill charge to which they never agreed without any chance of redress. Defendants, Ari Wagner, seek to wield preemption as a cudgel to gain all the protections of a valid contract, yet dodge liability for breach of contract claims by omitting essential terms. Price is an essential term. It is also the thing that they concealed and committed fraud by, because they know if they told that fellow it's going to cost you $30,000 or $50,000 to get from here to there, 41 miles, $30,000. And his wife standing there, she'd probably say, honey, let's get the car. Or maybe can I go buy a ground ambulance? That's only a 30 minute ride. One of those ground ambulances. He's left with no choice. He's trapped and he's being gouged. And we're asking this court to stand up to that kind of stuff. And we wrote briefs and gave you the authority. We believe your case in Watson. The in-bank decision cries out for it, because this is a lasting 400 to 1% of all the air carriers in this country that are transported. We brought the statistics to you in our brief. Counselor, if you want to reserve some time, you might. I better reserve. Thank you for being patient with me. I do appreciate that. Even when I was loud. Thank you, Mr. Gibson. May it please the court. Your honors, my name is Joshua Fox, and I'm here on behalf of the Appalachian Air Evac. During my time before the court, I intend to address why Judge Marshall was correct in dismissing all three of Plaintiff's claims under the Airline Deregulation Act. And if time permits, I'll also address our alternative argument, which is the case could be dismissed on the express written agreement. The ADA, the Airline Deregulation Act, was passed in 1978, and it includes an express preemption provision that preempts all state laws, no matter the form, that relate to the price, route, or service of an air carrier. And I choose the word air carrier because that is the word Congress chose to put in the act. Are air evac ambulances included in the definition of air carriers? And where is that? Where can that be? Yes, your honor. So air carrier is defined in 40102. You have to trace the air carrier definition all the way back, but it includes interstate air transportation, which is the carry of a passenger. If you look at the other definitions in the act itself, you will see that when they define things like intrastate air transportation, they limit it to 30 passenger transportation. If you actually look at the legislative history of the Airline Deregulation Act in any depth, you will see a long dialogue about whether air taxis should be included in the definition of air carrier. Air taxis are the type of certificate that air ambulance have. And Congress came to the conclusion that despite the fact that the CBA at the time was only issuing rate, like actual rates for commercial airlines, they intended to include preemption for all air carriers, which included air ambulances. You meant the CAB? I don't know what era you're talking about. So the CAB prior to the Airline Deregulation Act going into place. You said CBA, which to me means Selective Bargaining Agreement. Sorry, that was just talking a little bit too quick, your honor. I apologize. So the bottom line is that Congress very much intended all air carriers to be included in its definition of air carrier. And when you trace it back, it would promote a competition. Yes. So it would as Morales pointed out, so that there wouldn't be a hodgepodge of regulations across the states relating to the price route or service of an air carrier. This question as to air evac and to numerous other air ambulances has been answered at least 10 times by federal district courts or circuit courts finding that air ambulances are air carriers. The DOT has held the same position. The GAO report that counsel cites a number of times in the brief finds the same thing. This is a solid question that's been answered, whether air ambulances are considered air carriers under the ADA. And it should be pointed out that plaintiff's argument related to this, which is a non-textual policy argument. And it's the only argument that applies to claims two and three in their complaint. It's a non-textual argument. What federal regulation governs what can be charged? What federal regulation? So the Airline Deregulation Act took away the Civil Aeronautics Board authority to set rates and instead said that the free market would set the rates. But then it gave very detailed authority to the Department of Transportation to regulate monopoly power, to regulate unfair and deceptive trade practices, and to punish and to change the market if need be, including revoking any kind of authority. So what remedy is available to someone in the position of the appellant? They can complain to the Department of Transportation and the Department of Transportation has to take it from there. Congress has chosen that that is the route. How many times has the Department intervened in a case like this? So, Your Honor, the Department hasn't intervened in a case like this. Well, I guess there is intervention going on in cases across the country right now where the Department is opining related to this and we are an air carrier. Each department may be typical departments. They're captives of their industry. They're captives of their industry. So, Your Honor, I think this goes back to the question of is there an ability to carve out a public policy exception, a non-textual public policy exception to the ADA? And this court answered that question in Watson. So the standard is the Puerto Rico standard when you have a clear express preemption provision and in the paragraph just above the one that counsel cited, the Watson en banc opinion, this court clearly said that Puerto Rico is the standard. The only carve out the plaintiff is trying to use for this policy that air ambulances shouldn't be included is a non-textual argument that comes from any related to analysis case. Watson was a related to what does services mean? And services is not a defined term in the statute. The same thing in the rambam case. What does services mean when we're balancing? Is the state law an intrusion into services? The court has looked at a little at the question of what is services. No court across the country. Appellant's argument is isn't so much that there needs to be regulation of what you charged in his case, but that there was no price ever agreed to. There was no, you're not seeking, he's not seeking to have a price imposed, but simply to say that there was no agreement to pay a price. So your honor, I think that goes to counsel's other argument, which is that it fits under the Wolins exception, but only claim number one. It doesn't go to claim number two or claim number three. And I just want to be clear. I believe that counsel really makes two arguments. A policy argument that air ambulances should be as to claim one, which is that this fits within the Wolins exception. Addressing the Wolins exception, it should be made clear that Wolins only applies when you're looking at the four corners of the contract, as data manufacturing out of this court has told us. And that is not when you look closely at plaintiff's complaint and specifically the paragraph under complaint cause of action. Number one, it starts with, because defendants do not disclose price, that would be a Arkansas state policy decision that does not fit within the Wolins exception. Wolins is very clear about what fits within the exception. If it is specifically not a claim that they're violating, they're violating their own contract. That's correct. It's not a voluntary undertaking and instead there's no contract. Therefore we get a remedy from somewhere else. That's correct, your honor. And so if that remedy has to come from another source, which data manufacturing, I think does a very good job of showing that when it comes down and it preempts all the claims except for one remaining claim as to the $10 fee, it actually carved down that $10 fee question and said in footnote three and just above the relevant language that you can't say that it's an unconscionable rate. You can't say that the rate's wrong, etc. This ties into something that struck me as peculiar in your brief where you, in the recitation of all of the constraints that your client and other air evacuation carriers have to deal with, you cite the Arkansas administrative code as imposing severe requirements. Must carry people and so forth. So you're saying that there are state law remedies that govern your client or is the Arkansas administrative code simply enforcing a federal obligation? So there's really three components to the answer to that question, your honor. The first is that the airline deregulation act, the preemption provision applies to economic regulation. We're not arguing that there is some ability for in the emergency situation for there to be some state laws that apply. Additionally, there's some argument, although some courts have said that EMTALA doesn't apply, that there's an EMTALA requirement that we transport patients. Here, there's an Arkansas law that requires if lift off and we go, we cannot deny the patient because they do not have the ability to pay. That is good public policy. That is also something that we take on as a responsibility as a company, that we're not going to turn somebody away and put them in that situation simply because they don't have the right insurance. Medicare and Medicaid at this point in time don't play anywhere near cost, which creates a huge gap. And the PHI opinion, which is that of the third court of appeals in Texas had a full economic record. And in coming to the conclusion on playing this first argument, this public policy argument, that it's not permitted to go deeper than what Congress said in the act, it actually did look at the full record and dropped in a footnote that there are competitive market forces that are driving price. It's a very difficult market because of the market. Additionally, on playing this first argument, which is the public policy argument, if state law requires is allowed by federal law and is unpreempted in requiring air evacuation carriers to transport whether or not the patient can pay, that's economic regulation. If the state, if state law can go that far, why can't it go further? So your honor, we're not arguing that issue in this case. But it seems to me it's it suggests that there is a limit to the scope of preemption that you otherwise vigorously deny. So your honor, there is some limit to preemption. I don't know where that line is drawn. I mean, this is this is economic, you have to you have to carry someone whether or not you can they can pay. So there's a line between health and safety and the economic piece. And I don't know where that line is drawn. We certainly haven't made a claim in any way that that law is preempted, whether we could make a claim as to whether that law is printed. I don't know. But we haven't made a claim as to that law being preempted in any form or fashion. Well, if they can require you to carry someone who who can't pay, why can't they require you to pay some to care to transport someone without requiring them to sign a piece of paper that says you'll pay whatever we tell you when you get there. So your honor, could you repeat? I'm having trouble distinguishing. We have someone who can't pay and then we have someone who wouldn't who would it cost? Arkansas can say you have to carry someone that that can't pay. So when and your your way around that is to is to stick a piece of paper and when they're when they're on the gurney and sign here that says you'll put you'll agree to pay whatever we say at the end. So I understand your question now. So Arkansas less says we have to transport. It doesn't say we can't bill. So we can bill even the patient that has no ability to pay any form or fashion. We can build a patient that has Medicare and we're only going to receive the Medicare amount. In other words, the states are not permitted to prohibit contracts of adhesion. This would be a contract of adhesion. That's correct. They can't prohibit our ability to have a contract with the party by setting the rate for that agreement. It's an elegant way of saying it's a contract of adhesion, but we are permitted to use those. Your Honor, I think that they are permitted to say that we we can have an agreement that state just cannot impose under Wollons an outside force into that agreement. That's not a voluntary undertaking. It should be noted, Your Honor, but all of your honors that there hasn't been an allegation that we sued Mr. Farrell or that we turned him into a credit reporting agency or that we turned him into a consumer protection company. The reason for that is that's not our company's policy. That's not what we do. Now, the fact that we sent him an invoice and that we had negotiations and discussions with him about what his insurance didn't pay. Keep in mind, his insurance only paid a thousand dollars on the to your question a minute ago about whether or not we had to transport. It doesn't prevent us from sending the invoice. We may not be able to collect from Mr. Farrell or from other people. It's whether Arkansas law prevents us from even attempting to do that collection in any form or fashion. And it should be noted that there have been at least 10 district courts in this country that have applied the preemption provision to air ambulances, a in the A.D.A. two air ambulances, including the Schneider opinion, which is a case that's the Oklahoma case, Your Honor, which is up on the 10th Circuit right now on similar issues. And in fact, the exact same issue was argued in that case by counsel after the fact that there should be no contract at all. And I want to finalize with this, Your Honor, that there's three part test to the A.D.A. Whether we're an air carrier, do the laws relate to the price rate or service of an air carrier? And are they the force and effective law? And all three of those are clearly met, as Judge Marshall said. And there's no room for the Wolins exception as to claim number one, because you would have to insert an Arkansas state policy, one we don't even think exist or is in Arkansas law. But if it did exist, you would have to insert it in. It wouldn't be a voluntary undertaking, and therefore, preemption should apply. And for those reasons, we'd like you to affirm, Judge Marshall. So in your view, if you did sue to collect, Mr. Fair, sue under this contract that you want us to uphold as an alternative ground. And if you sued to collect and there was a defense that it's a defense preempted. Your Honor, I think it would be in the nature of the Lindley case, which is in the Fifth Circuit, which was a an argument that the party made a case. I don't know anything about instead of answering the question. So the answer to the question is it would depend on whether the defense is inserting a state policy into the equation or not. If it's inserting a state public policy into the equation, it would. If it's inserted, it's simply a it's simply a state state aspect of state, maybe common law. And that contract of adhesion is not is not enforceable. If that means we had no agreement at all, then I think that would fit within the wall of the collection suit. If you uphold your alternative ground and then you go into state court and say, OK, you owe us however many thousand. And the defense is that's uncollect that that's unenforceable. Is that is that defense preempted? So I think the answer is no, Your Honor, but I think I would have to actually see the exact facts of the case. I think the answer is so that's not an allegation in this case. No, no, no, no. But you want us you want us to say that. Contract, whatever it is, that piece of paper that Mr. Farrell signed is an enforceable contract in which he says, I agree to pay what you charge me. Yes. All right. And we buy into your alternative ground and we forget all this preemption stuff. And we just say it's an enforceable contract. And now you sue on it. The basic squares in Arkansas federal or state court and the defense is it's a contract of adhesion and therefore unenforceable or uncollectable. Whether or not an agreement exists, I think fits within the Wollons exception by itself. If you insert a state policy to avoid it, I think in data manufacturing, the specific statement that this court made was if you say that the prices were unconscionable or if you say that the agreement should be void for public policy, that preemption applies. That's exactly what this court said in data manufacturing. But if you want to actually have a discussion about whether there was an agreement and it's on all fours, then that's within the four corners and that's Wagner. And so I mean, not Wagner, excuse me, that's data manufacturing and that's within Wollons exception. So I think it would depend specifically on the facts and allegations and whether state policy was being inserted here. Plaintiff says in order for there to be an agreement, public disclosure of price had to happen first. And if you look where the state AGs were saying, you have to disclose certain things about your prices in order for you to be able to advertise. I was reading the briefs. Was it William Vanderbilt, the real fruit tycoon who was reported to once have said the public be damned. That's your client's attitude. That is not our client's attitude. We're not even close. Absolutely not. We couldn't stress more that the one case that has an actual economic record, which is the PHI case out of the third court of appeals, actually said that there is competitive market forces. And there is a reality in this business with the way that Medicare and Medicaid is set up, that there's a transfer of expense and cost. And it's not public be damned by any stretch. I know on my way to the office every morning in Sioux Falls, well, about five or six times a year. Well, I drive past the Severa Hospital and several times a year I see the tragedy involved. And about two miles west, Sanford has a hospital and I see their helicopter going. Is that the competition we're talking about or not? Yes, your honor. That is the competition. And what extent it lowers the cost? We don't know because anyway, well, there were economists in that case and there was discussion about exactly what the impact is of that cost. The court ultimately said that that's not appropriate analysis under the ADA, but was I retract my comment about William Vanderbilt as applying to your case? Thank you, your honor. Mr. Fuchs or Fox, excuse me, mispronounced your name. Mr. Gibson. Yes, sir. I'm going to be quick because my time is short. PHI case up for rehearing up for review before the Texas Supreme Court. Not good authority. Furthermore, everything they hang their hat on is in a footnote and there's no way to know what evidentiary hearing they may have had in that administrative case. I will say there's no evidence in this case because we're on 12B6. The other thing I want to mention, carve out based on policy. Judges, does anybody on this panel believe Congress meant to say no control on pricing by that guy? Today, Jim Farrell gets a $30,000 bill. Tomorrow it's 50. Next year, it's 100. Next year is 500. And the ADA preemption says you got a card to steal from the sick and injured in Arkansas. That's what it means. It can't mean that the law can't make that kind of sense. We submit respectfully. There is no regulation. But back to the Federal Trade Commission Act, you'd make the same argument there. I don't know about the fact that the Federal Trade Commission can has full power to regulate unfair and anti-competitive racks and practices. But there's no private right of action means that there's there's complete power to gouge and kick and steal because because I can't sue them. I'm sure I'm saying you're the Department of Transportation. I'm saying that the Department of Transportation's regulatory authority here strikes me very much like Section five of the Federal Trade Commission. It's not. And let me tell you why. Mr. Farrell can't even file a complaint. That's the you can't even get it heard. Only the industry. I practice in the under the Federal Trade Commission. There is no private right of action. You have me at a disadvantage, Judge. I never practiced in that actions have complained to the moon for decades because only the Federal Trade Commission regulates unfair and anti-competitive acts and practices. We submit this court has the opportunity to look at the policy that Congress wanted to pursue was remote competition. What they're asking this court to do is to amen that there is not going to be any uh any control over what they can charge any citizen and that includes everybody in this room. Uh contract of adhesion if I could be very quick. Counsel your time's expired. I'm cut. Judges y'all been patient with me. I do appreciate it. Have a lot more I'd like to share with you. Uh um but you know most of it's in the brief so but thank you. Thank you.